No. 22-60146

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STATE OF LOUISIANA; STATE OF ARIZONA; STATE OF ALABAMA;
STATE OF ARKANSAS; STATE OF KENTUCKY; STATE OF MISSOURI;
STATE OF MONTANA; STATE OF OKLAHOMA; STATE OF SOUTH
CAROLINA; STATE OF TENNESSEE STATE OF TEXAS; STATE OF UTAH,

Petitioners,

v.

UNITED STATES DEPARTMENT OF ENERGY; JENNIFER GRANHOLM,
SECRETARY, U.S. DEPARTMENT OF ENERGY,

Respondents.

---

On Petition for Review from the United States Department of Energy

---

## BRIEF FOR RESPONDENTS

---

AMI GRACE-TARDY
*Assistant General Counsel*

PETER COCHRAN
KRISTIN KOERNIG
KATHRYN MCINTOSH
*Attorneys*
*Department of Energy*
*Washington, D.C. 20585*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MICHAEL S. RAAB
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, D.C. 20530*
*(202) 514-3469*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as respondents are a government agency and a government official sued in her official capacity. 5th Cir. R. 28.2.1.

*s/ Amanda L. Mundell*
Amanda L. Mundell

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners seek vacatur of a final rule issued by the Department of Energy and have requested oral argument.  The government agrees that argument may assist the Court in its review, and we likewise request argument.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE .....................................................................2

      A.     Statutory And Regulatory Background..........................................2

      B.     Factual And Procedural Background.............................................6

SUMMARY OF ARGUMENT..................................................................13

STANDARD OF REVIEW ........................................................................14

ARGUMENT ..............................................................................................15

I.      Petitioners Lack Standing To Challenge The Final Rule.....................15

II.    The 2022 Final Rule Is Substantively Sound, And Petitioners Offer No Basis On Which To Set It Aside ..........................................................21

      A.     The 2022 Final Rule Is Fully Consistent With The EPCA ......21

      B.     The 2022 Final Rule Is Neither Arbitrary Nor Capricious ......29

CONCLUSION ...........................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*A Cmty. Voice v. U.S. EPA,*
997 F.3d 983 (9th Cir. 2021) ........................................ 29

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) ........................................ 20

*Brackeen v. Haaland,*
994 F.3d 249 (5th Cir. 2021) ........................................ 29

*California v. Texas,*
141 S. Ct. 2104 (2021) ........................................ 19

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398. (2013) ........................................ 15, 19

*Department of Homeland Sec. v. Regents of the Univ. of Cal.,*
140 S. Ct. 1891 (2020) ........................................ 31, 32

*El Paso County v. Trump,*
982 F.3d 332 (5th Cir. 2020) ........................................ 18

*FW/PBS, Inc. v. City of Dallas,*
493 U.S. 215 (1990)........................................ 15

*Iowa ex rel. Miller v. Block,*
771 F.2d 347 (8th Cir. 1985) ........................................ 18

*ITT World Commc'ns, Inc. v. Federal Commc'ns Comm'n,*
725 F.2d 732 (D.C. Cir. 1984) ........................................ 29

*Little v. KPMG LLP,*
575 F.3d 533 (5th Cir. 2009) ........................................ 13, 19

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)........................................ 19, 20

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ........................................ 20

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins.,*
463 U.S. 29 (1983) ........................................ 24

*Mozilla Corp. v. Fed. Commc'ns Comm'n,*
940 F.3d 1 (D.C. Cir. 2019) ...................................................................... 31

*Owner-Operator Indep. Drivers Assoc. v. U.S. Dep't of Transp.,*
831 F.3d 961 (8th Cir. 2016) ..................................................................... 15

*Pennsylvania, by Shapp v. Kleppe,*
533 F.2d 668 (D.C. Cir. 1976) .................................................................. 18

*Sierra Club v. EPA,*
292 F.3d 895 (D.C. Cir. 2002) .................................................................. 15

*Sullivan v. Weisbrod,*
875 F.2d 52 (5th Cir. 1989) ....................................................................... 15

*TransUnion LLC v. Ramirez,*
141 S. Ct. 2190 (2021) ............................................................................... 15

*Weissman v. National Railroad Passenger Corp.,*
21 F.4th 854 (D.C. Cir. 2021) ................................................................... 16

*Wyoming v. U.S. Dep't of Interior,*
674 F.3d 1220 (10th Cir. 2012) ................................................................ 19

*Xcel Energy Servs. Inc. v. Federal Energy Regulatory Comm'n,*
41 F.4th 548 (D.C. Cir. 2022) ................................................................... 33

*Zero Zone, Inc. v. U.S. Dep't of Energy,*
832 F.3d 654 (7th Cir. 2016) ................................................................ 2, 3

**Statutes:**

Administrative Procedure Act (APA),
5 U.S.C. § 706(2)(A) .................................................................................. 15

Energy Policy and Conservation Act,
Pub. L. No. 94-163, 89 Stat. 871 (1975)
(codified as amended at 42 U.S.C. §§ 6201-6422) ................................... 2
42 U.S.C. §§ 6291-6309 ....................................................................... 17
42 U.S.C. §§ 6311-6317 ....................................................................... 17
42 U.S.C. § 6295(g) ............................................................................... 3
42 U.S.C. § 6295(g)(3) .......................................................................... 4
42 U.S.C. § 6295(g)(9) ....................................................................... 3, 4
42 U.S.C. § 6295(g)(9)(A) ............................................................... 5, 22

42 U.S.C. § 6295(g)(9)(B) ................................................................ 5

42 U.S.C. § 6295(g)(10) ................................................................... 3

42 U.S.C. § 6295(g)(10)(A) ........................................................ 5, 22

42 U.S.C. § 6295(g)(10)(B) .............................................................. 5

42 U.S.C. § 6295(*l*) ......................................................................... 4

42 U.S.C. § 6295(m) ....................................................................... 4

42 U.S.C. § 6295(o) ........................................................ 1, 2, 13, 23

42 U.S.C. § 6295(o)(1) ............................................................... 4, 21

42 U.S.C. § 6295(o)(2)(A) .......................................................... 4, 21

42 U.S.C. § 6295(o)(3)(B) .......................................................... 4, 21

42 U.S.C. § 6295(q) ................................................................... 7, 24

42 U.S.C. § 6295(q)(1) ........................................ 1, 4, 5, 13-14, 22, 24

42 U.S.C. § 6295(q)(2) ............................................................... 5, 22

42 U.S.C. § 6306(b) .......................................................................... 1

**Regulations:**

10 C.F.R. § 430.32(f) ................................................................. 3, 22

10 C.F.R. § 430.32(g) ................................................................ 3, 22

10 C.F.R. § 430.32(h) ................................................................ 3, 22

10 C.F.R. § 430.32(h)(3) ................................................................. 22

10 C.F.R. § 431.152 ........................................................................ 17

**Legislative Material:**

H.R. Rep. No. 95-496 (1977) ............................................................. 3

**Other Authorities:**

Energy Conservation Program:  Energy Conservation Standards for
    Dishwashers, Notification of Petition for Rulemaking,
    83 Fed. Reg. 17,768 (Apr. 24, 2018) ............................................. 6

Energy Conservation Program:  Energy Conservation Standards for
    Dishwashers, Notification of Petition for Rulemaking,
    84 Fed. Reg. 33,869 (July 16, 2019) ............................................. 6

Energy Conservation Program: Energy Conservation Standards for
  Residential Clothes Dryers and Room Air Conditioners,
  76 Fed. Reg. 22,454 (Apr. 21, 2011) ............................................... 5

Energy Conservation Program: Energy Conservation Standards for
  Residential Clothes Washers, 77 Fed. Reg. 32,308 (May 31, 2012)............................ 5

Energy Conservation Program: Energy Conservation Standards for
  Clothes Washers and Clothes Dryers, Notification of Petition for
  Rulemaking, 85 Fed. Reg. 49,297 (Aug. 13, 2020) .................................................. 6, 7

Energy Conservation Program: Establishment of New Product Classes
  for Residential Clothes Washers and Consumer Clothes Dryers,
  85 Fed. Reg. 81,359 (Dec. 16, 2020) ...................................................... 7, 8, 9

Energy Conservation Program: Product Classes for Residential
  Dishwashers, Residential Clothes Washers, and Consumer Clothes
  Dryers, 86 Fed. Reg. 43,970 (Aug. 11, 2021) ......................................... 10, 11

Energy Conservation Program: Product Classes for Residential
  Dishwashers, Residential Clothes Washers, and Consumer
  Clothes Dryers, 87 Fed. Reg. 2673 (Jan. 19, 2022) ............... 1, 11, 12, 13, 16, 17, 23,
  24, 25, 27, 28, 30, 31, 32, 33

Energy Conservation Program: Energy Conservation Standards for
  Residential Dishwashers, 81 Fed. Reg. 90,072 (Dec. 13, 2016) ................................... 5

Energy Conservation Program: Establishment of a New Product Class
  for Residential Dishwashers, 85 Reg. 68,723 (Oct. 30, 2020)........................7, 8, 9, 18

72 Fed. Reg. 58,190 (Oct. 12, 2007) .......................................................... 27, 28

74 Fed. Reg. 44,914 (Aug. 31, 2009) ................................................... 27-28, 28

## STATEMENT OF JURISDICTION

Petitioners are a group of States who petition for review of a final rule issued on January 19, 2022, by the U.S. Department of Energy (DOE).  *See* Energy Conservation Program:  Product Classes for Residential Dishwashers, Residential Clothes Washers, and Consumer Clothes Dryers, 87 Fed. Reg. 2673 (Jan. 19, 2022) (2022 Final Rule).  The petition was filed within 60 days after the promulgation of the rule, on March 16, 2022.  This Court has jurisdiction under 42 U.S.C. § 6306(b).

## STATEMENT OF THE ISSUES

The Energy Policy and Conservation Act (EPCA) sets mandatory energy use and efficiency standards for certain consumer products, including residential dishwashers, residential clothes washers, and consumer clothes dryers.  The statute authorizes DOE to amend these energy conservation standards so long as the "amended energy conservation standard" is "designed to achieve the maximum improvement in energy efficiency[] which the Secretary determines is technologically feasible and economically justified," and the amended standard does not "increase[] the maximum allowable energy use, . . . or decrease[]the minimum required energy efficiency, of a covered product."  42 U.S.C. § 6295(o).  The statute further provides that any "rule prescribing an energy conservation standard for a type (or class) of covered products shall specify a level of energy use or efficiency" and provide a basis for and justification of the establishment of a new level.  *Id.* § 6295(q)(1).  In 2020, DOE issued two final rules (the short-cycle rules) establishing new product classes for

residential dishwashers, residential clothes washers, and consumer clothes dryers.[1]  In

2022, following notice and comment, DOE revoked the short-cycle rules for the

agency's failure during the 2020 rulemakings to adequately consider the requirements

contained in 42 U.S.C. § 6295(o).

The questions presented are:

1.  Whether petitioners have standing to challenge the 2022 Final Rule.

2.  Whether DOE violated the EPCA by revoking its previous rules relating to

short-cycle products on the ground that such rules failed to adequately consider the

EPCA's requirements.

3.  Whether the agency's decision to revoke the short-cycle rules was otherwise

arbitrary or capricious.

## STATEMENT OF THE CASE

### A.     Statutory And Regulatory Background

1.  Congress enacted the Energy Policy and Conservation Act, Pub. L. No. 94-

163, 89 Stat. 871 (1975) (codified as amended at 42 U.S.C. §§ 6201-6422), "in part to

improve the energy efficiency of specific types of equipment and appliances." *Zero

Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 661 (7th Cir. 2016).  To that end, the

statute grants DOE the authority to regulate the energy efficiency of certain consumer

---

[1] Petitioners' brief appears to be focused on dishwashers and clothes washers
and does not take direct issue with the rulemaking as it pertains to consumer clothes
dryers.

products by imposing new energy efficiency standards or amending existing standards. "As originally enacted, the EPCA authorized . . . voluntary energy improvement target[s] that would encourage manufacturers to decrease the energy consumption of their equipment." *Id.* at 662 (alteration in original and quotation marks omitted). But Congress soon amended the statute "to impose *mandatory* energy conservation standards" after determining that voluntary targets offered "little incentive" for manufacturers "to exceed a target." *Id.* (quoting H.R. Rep. No. 95-496, at 45 (1977)).

As relevant here, Congress initially divided dishwashers, clothes washers, and clothes dryers into different product classes and set parameters for energy and water use (as applicable) for each class. 42 U.S.C. § 6295(g).[2] Dishwashers are divided into two classes based on their capacity: standard and compact. 42 U.S.C. § 6295(g)(10). Clothes washers are classified based on whether they are top- or front-loading. *Id.* § 6295(g)(9). With respect to "[r]esidential dishwashers manufactured on or after January 1, 2010," Congress mandated that "a standard size dishwasher [shall] not exceed 355 kWh/year and 6.5 gallons per cycle," while a "compact size dishwasher [shall] not exceed 260 kWh/year and 4.5 gallons per cycle." *Id.* § 6295(g)(10). Similarly, "top-loading or front-loading standard-size" "[r]esidential clothes washers manufactured on or after January 1, 2011" must have "a Modified Energy Factor of at

---

[2] The EPCA initially established energy conservation standards for these products, which have been amended through subsequent rulemakings that also established additional product classes. *See* 10 C.F.R. § 430.32(f), (g), (h).

least 1.26" and "a water factor of not more than 9.5." *Id.* § 6295(g)(9).  Congress also included an initial standard for gas clothes dryers as well.  *Id.* § 6295(g)(3).

The EPCA grants DOE the authority to amend energy conservation standards or prescribe new ones, subject to certain conditions.  *See* 42 U.S.C. § 6295(*l*); *id.* § 6295(m) (directing DOE to evaluate whether to propose amendments to existing conservation standards not later than six years "after issuance of any final rule establishing or amending a standard").  First, "[a]ny new or amended energy conservation standard . . . shall be designed to achieve the maximum improvement in energy efficiency[] which the Secretary determines is technologically feasible and economically justified." *Id.* § 6295(o)(2)(A).  The EPCA also prohibits DOE form prescribing a new or amended standard that "will not result in significant conservation of energy." *Id.* § 6295(o)(3)(B).  Additionally, the statute contains an anti-backsliding provision, which prohibits DOE from "prescrib[ing] any amended standard which increases the maximum allowable energy use, . . . or decreases the minimum required energy efficiency, of a covered product." *Id.* § 6295(o)(1).

Moreover, any "rule prescribing an energy conservation standard for a type (or class) of covered products" must "specify a level of energy use or efficiency." 42 U.S.C. § 6295(q)(1).  That level of energy use or efficiency may be "higher or lower" than the level that "applies (or would apply)" for the class of covered products "which have the same function or intended use," but only if the Secretary makes one of two determinations:  either the products must "consume a different kind of energy from

4

that consumed by other covered products within such . . . class[]," or the products must "have a capacity or other performance-related feature which other products within such . . . class[] do not have," and which "justifies the establishment of a higher or lower standard." *Id.* In promulgating a higher or lower standard, the agency must "include an explanation of the basis on which such . . . level was established." *Id.* § 6295(q)(2).

2.  In accordance with these provisions in the EPCA, in 2011, DOE amended the energy conservation standards for consumer clothes dryers manufactured on and after January 1, 2015. *See* Energy Conservation Program: Energy Conservation Standards for Residential Clothes Dryers and Room Air Conditioners, 76 Fed. Reg. 22,454 (Apr. 21, 2011). In 2012, DOE amended the energy use and efficiency standards for residential clothes washers. *See* Energy Conservation Program: Energy Conservation Standards for Residential Clothes Washers, 77 Fed. Reg. 32,308 (May 31, 2012); *see also* 42 U.S.C. § 6295(g)(9)(B) (directing DOE to determine whether to amend the conservation standards for clothes washers manufactured on or after January 1, 2015). And in 2016, DOE amended the energy use and efficiency standards for residential dishwashers. Energy Conservation Program: Energy Conservation Standards for Residential Dishwashers, 81 Fed. Reg. 90,072 (Dec. 13, 2016); *see also* 42 U.S.C. § 6295(g)(10)(B) (requiring the Secretary to determine whether to amend the conservation standards "for dishwashers manufactured on or after January 1, 2018").

5

**B.      Factual And Procedural Background**

*DOE Establishes New Product Classes For Standard Residential Dishwashers, Residential*

*Clothes Washers, and Consumer Clothes Dryers*

In 2018, DOE received a petition from the Competitive Enterprise Institute

(CEI) requesting that the agency define a new product class under the EPCA for

standard residential dishwashers that are equipped with an option to run a "normal"

cycle in 60 minutes or less.  *See* Energy Conservation Program:  Energy Conservation

Standards for Dishwashers, Notification of Petition for Rulemaking, 83 Fed. Reg.

17,768 (Apr. 24, 2018).  After a period of public comment, DOE granted the petition

in 2019 and proposed to create a new product class for standard residential

dishwashers with a normal cycle lasting one hour or less.   Energy Conservation

Program:  Energy Conservation Standards for Dishwashers, Notification of Petition

for Rulemaking, 84 Fed. Reg. 33,869 (July 16, 2019).

While the dishwashers rulemaking was underway, in August 2020, DOE also

issued a notice of proposed rulemaking pertaining to product classes for residential

clothes washers and consumer clothes dryers.  *See* Energy Conservation Program:

Energy Conservation Standards for Clothes Washers and Clothes Dryers, Notification

of Petition for Rulemaking, 85 Fed. Reg. 49,297 (Aug. 13, 2020).  As with

dishwashers, DOE proposed to establish new product classes for residential clothes

washers based on cycle time—one class for top-loading clothes washers with a normal

cycle of less than 30 minutes and a class for front-loading clothes washers with a

normal cycle of less than 45 minutes—and new product classes for vented, electric

standard-size clothes dryers and vented gas consumer clothes dryers with a test cycle

time of less than 30 minutes. *Id.* at 49,297-98, 49,300.

DOE received hundreds of comments on the proposed rules. Numerous

commenters, including 12 States, expressed the view that the proposed rules "violated

EPCA's product class provision because" DOE "failed to include accompanying

efficiency standards for the newly created product class for short cycle" products, as

contemplated by 42 U.S.C. § 6295(q), or take account of "EPCA's anti-backsliding

provision[] and the economic justification and technological feasibility analyses" under

§ 6295(o). *See* Energy Conservation Program: Establishment of a New Product Class

for Residential Dishwashers, 85 Reg. 68,723, 68,733 (Oct. 30, 2020); *see also* Energy

Conservation Program: Establishment of New Product Classes for Residential

Clothes Washers and Consumer Clothes Dryers, 85 Fed. Reg. 81,359, 81,367 (Dec.

16, 2020). These States also noted that "DOE cannot delay evaluating whether a new

standard would meet the anti-backsliding provision in a separate rulemaking because

such actions must be considered together." 85 Fed. Reg. at 68,733. Other

commenters stated that "even if [DOE] had the authority to create a new product

class based on a shorter cycle time . . . , the anti-backsliding provision prevents the

standard that applies to that class from being less stringent than the current standard

applicable to all dishwashers regardless of cycle duration." *Id.* at 68,734.

In October and December 2020, DOE published final rules establishing the proposed new product classes for residential dishwashers, and residential clothes washers and consumer clothes dryers, respectively. 85 Fed. Reg. at 68,724 (dishwashers); 85 Fed. Reg. at 81,359 (clothes washers and dryers). The agency explained that "a short 'Normal' cycle" is "a performance-related feature that other dishwashers currently on the market lack, which justifies the establishment of a separate product class subject to a higher or lower standard than that currently applicable to dishwashers." *See, e.g.*, 85 Fed. Reg. at 68,726. DOE made similar findings regarding the short-cycle options for clothes washers and dryers. 85 Fed. Reg. at 81,361.

At the time, and in response to comments questioning DOE's authority to establish product classes that could consume unlimited amounts of energy and water, DOE "concluded that it ha[d] the legal authority to establish a separate short cycle product class," as proposed in both rules, "pursuant to . . . 42 U.S.C. 6295(q)." 85 Fed. Reg. at 68,726; 85 Fed. Reg. at 81,372. In the 2020 residential clothes washers and consumer dryers final rule, the agency acknowledged that the rule did not set energy efficiency standards for these product classes, but DOE stated that § 6295(q)(1)(B) "does not require the Department to simultaneously establish energy conservation standards in the same rulemaking as the determination of a new product class." 85 Fed. Reg. at 81,367. The agency further stated that it was "following the same practice by first establishing new product classes . . . and reserving a place for

8

future energy conservation standards." *Id.* at 81,368. And it explained that it "intends to conduct the necessary rulemakings that will consider and evaluate the energy and water consumption limits for the new product classes" under the criteria described in § 6295(o)(2)(A). *Id.*; *see also* 85 Fed. Reg. at 68,726 (stating that DOE "intends to conduct a separate rulemaking to determine the applicable test procedure and energy conservation standards for the new product class" (footnote omitted)).

With respect to claims about anti-backsliding, the agency responded that it "found" these comments "unpersuasive." 85 Fed. Reg. at 68,735. DOE noted that the "EPCA authorizes the Secretary to create [a new] product class, notwithstanding EPCA's anti-backsliding provision." *Id.* at 68,736. The agency stated that subsections (o) and (q) must be read "in conjunction" to permit "the designation of a product class with a standard lower than that applicable to other product classes for that covered product." *Id.* at 68,734; 85 Fed. Reg. at 81,368. The agency further stated that the EPCA permits DOE "to reduce the stringency of the standard currently applicable to the products covered under the newly established separate product class[] . . . upon making the determinations required by 42 U.S.C. 6295(q)." 85 Fed. Reg. at 81,369. The agency also stated in the dishwashers rule that DOE "d[id] not alter any existing energy or water conservation standards for dishwashers" in that rule but instead created new product classes. 85 Fed. Reg. at 68,728.

The rules took effect on November 30, 2020 (dishwashers), and January 15, 2021 (clothes washers and clothes dryers).[3]

*DOE Revokes The Short-Cycle Rules*

In August 2021, DOE issued a notice of proposed rulemaking, proposing to revoke the 2020 Final Rules for improperly promulgating amended standards and to reinstate the prior product classes and applicable standards for the covered products. *See* Energy Conservation Program: Product Classes for Residential Dishwashers, Residential Clothes Washers, and Consumer Clothes Dryers, 86 Fed. Reg. 43,970 (Aug. 11, 2021). The agency explained that by separating certain dishwashers, clothes washers, and clothes dryers from their regulated counterparts to operate subject to no energy and/or water conservation standards, DOE had amended the existing standards applicable to those short-cycle products without considering the requirements contained in subsection (o). *Id.* at 43,973. DOE sought comments on whether revocation was warranted under these circumstances.

After receiving hundreds of comments on the proposed rule, DOE issued a rule revoking the 2020 short-cycle rules and reinstating the previous product classes in January 2022. The agency noted that "short-cycle residential dishwashers, residential

---

[3] Several States and other stakeholders filed petitions for review of the short-cycle rules. These challenges were consolidated in the Second Circuit and are being held in abeyance pending this Court's decision in this case. *See Natural Res. Def. Council v. DOE*, No. 20-4256 (2d Cir.); *California v. DOE*, No. 20-4285 (2d Cir.); *California v. DOE*, No. 21-108 (2d. Cir.); *Alliance for Water Efficiency v. DOE*, No. 21-428 (2d Cir.); *Sierra Club v. DOE*, No. 21-564 (2d Cir.).

clothes washers, and consumer clothes dryers were all subject to energy conservation standards prior to the October 2020 and December 2020 Final Rules." 87 Fed. Reg. at 2680. "By stating that short-cycle products were no longer subject to energy or water conservation standards, the . . . Final Rules changed the status quo in a direction that would allow for unlimited energy and water use by these short-cycle products." *Id.* The agency explained that such a change was an "amend[ment]" to the "standards for these equipment classes and thus was required to satisfy the requirements in EPCA for issuing an amended standard." *Id.* (quoting 86 Fed. Reg. at 43,970, 43,973-74); *see also* 87 Fed. Reg. at 2679 (acknowledging that because there were already "standards for residential clothes washers and residential dishwashers," DOE "could not weaken those standards without considering EPCA's anti-backsliding provision").

The agency further stated that it was not "contending in this rulemaking the validity of the determinations made about whether short cycles provide a 'performance-related feature' and 'utility.'" 87 Fed. Reg. at 2682. It explained that "the appropriate occasion for conducting the 42 U.S.C. 6295(q) analysis" necessary to determine that a new product class is warranted "is in a rulemaking prescribing new or amended standards." *Id.* Because the 2020 Final Rules "failed to undertake consideration of the statutory criteria explicitly applicable to a rulemaking to establish a new or amended standard," the agency "concluded that [the rules] were promulgated in violation of that process." *Id.*

Responding to comments inviting the agency to propose new standards for short-cycle products in lieu of revoking the rules, DOE acknowledged that it "could propose new standards for short-cycle products" but "declin[ed] to do so at this time." 87 Fed. Reg. at 2683. The agency highlighted the "time and resources that it would entail to develop these new standards in relation to other obligations of the program," the "lack of presently-available data that would be necessary to analyze the short-cycle product classes and establish new standards for these class[es]," and the "absence of new products on the market that would fall within these new product classes." *Id.* The agency "weighed these factors against the benefit of more quickly fixing an EPCA procedural error through the revocation of this rulemaking." *Id.*

The agency further explained that it had "made a policy judgment that EPCA's expressed purposes for energy and water conservation . . . would be thwarted if DOE could avoid EPCA's restrictions on amending existing standards by nominally characterizing a regulatory change to an existing standard as something other than an amendment." 87 Fed. Reg. at 2684. "Considerations regarding energy and water use, as well as EPCA's other requirements," therefore "should have been addressed during the rulemaking process for the 2020 Final Rules." *Id.* at 2684-85.

Finally, the agency explained that the 2020 short-cycle rules "failed to consider the potential impacts on manufacturers," who had complained of "uncertainty created by [DOE's] not establishing standards for the new product classes," "possible job

losses, decreased sales, and a loss of confidence in residential dishwashers[ and] residential clothes washers." 87 Fed. Reg. at 2685.

## SUMMARY OF ARGUMENT

I.  The States lack Article III standing to challenge the 2022 Final Rule. Although some petitioners submitted declarations in which officials attest to purchasing dishwashers and clothes washers paid for by the States of Louisiana and Arizona, no State offers any specific evidence indicating that the States intended to purchase the *short-cycle* products at issue in this litigation.  The States similarly cannot establish standing based on their assertion that the 2022 Final Rule will result in a decrease in state sales tax revenue.  The States fail to quantify the anticipated revenue they claim to have lost, and the possibility that the States may collect less sales tax revenue turns entirely on the behavior of third parties—circumstances "too conjectural or hypothetical to confer standing."  *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

II.  Even if the States have standing, their challenge fails on the merits.  The EPCA prohibits DOE from issuing an amended energy conservation standard that "increases the maximum allowable energy use, . . . or decreases the minimum required energy efficiency, of a covered product."  42 U.S.C. § 6295(o).  The statute further provides that any "rule prescribing an energy conservation standard for a type (or class) of covered products" must "specify a level of energy use or efficiency" and provide a justification for the establishment of a "higher or lower level."  *Id.*

13

§ 6295(q)(1).  In the 2022 Final Rule, DOE explained that the 2020 short-cycle rules failed to adequately consider subsection (o), even though the rules amended existing energy conservation standards for short-cycle products, and failed to fully comply with subsection (q).  The agency therefore properly determined that revocation of the rules was warranted.

Petitioners' arguments to the contrary rest on a mistaken understanding of the statute.  DOE could not amend the energy conservation standards applicable to certain types of residential dishwashers, residential clothes washers, and consumer clothes dryers to allow for unlimited energy usage without considering the requirements of subsection (o), including the EPCA's anti-backsliding provision.

The remainder of the States' contentions urge this Court to conclude that DOE offered an unreasonable interpretation of the EPCA's provisions.  But the 2022 Final Rule does not purport to interpret § 6295(o) or (q).  Rather, the agency explained that it was revoking the short-cycle rules on the ground that DOE failed to *consider* the criteria of subsection (o).  The 2022 Final Rule therefore does not determine whether or when subsections (o) and (q) conflict or how any such conflict should be resolved.

## STANDARD OF REVIEW

Under the Administrative Procedure Act (APA), the final rule may be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law.  5 U.S.C. § 706(2)(A).  *See, e.g.*, *Sullivan v. Weisbrod*, 875 F.2d 52, 527-28 (5th Cir. 1989).

## ARGUMENT

### I.    Petitioners Lack Standing To Challenge The Final Rule

Petitioners have the burden to demonstrate standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398. 408 (2013).  They must show that they "(i) . . . suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  The factual basis for these "elements of standing 'cannot be inferred'" and "must affirmatively appear in the record."  *Owner-Operator Indep. Drivers Assoc. v. U.S. Dep't of Transp.*, 831 F.3d 961, 966 (8th Cir. 2016) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  Thus, petitioners "seeking direct appellate review of an agency action must prove each element of standing with specific facts supported by affidavit or other evidence."  *Id.*  This is particularly important where petitioners' "standing is not self-evident."  *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

In this case, the States allege two types of injuries flowing from the 2022 Final Rule.  First, the States claim that the 2022 Final Rule has harmed their ability to purchase a wider range of dishwashers and clothes washers.  Br. 68.  Second, the States claim a loss of sales tax revenue associated with consumers who would have "purchase[d] new [short-cycle] dishwashers and washing machines and/or spen[t]

more on such machines." Mot. 2; *see* Br. 68-69. Neither alleged injury suffices for Article III standing.

1.  Although the States collectively assert that they "frequently purchase dishwashers and washing machines affected by the Performance and Repeal Rules," Br. 68, only two States—Louisiana and Arizona—have provided declarations attesting to the States' spending.[4] None of those declarations reveals any plans to purchase *short-cycle* dishwashers, clothes washers, or clothes dryers, as opposed to other standard residential dishwashers, clothes washers, or clothes dryers. Instead, the declarations merely state that various state-operated facilities "have dishwashers, washers, and dryers" that the "State purchases." *E.g.*, Lea Decl. 2. The States' reliance on *Weissman v. National Railroad Passenger Corp.*, 21 F.4th 854, 857-58 (D.C. Cir. 2021), is therefore misplaced, as none of the States has demonstrated a "desire[]" to purchase the products at issue in this rulemaking. And even if the States had done so, petitioners have failed to show that the final rule at issue here has "made a consumer's desired product altogether unavailable," *Weissman*, 21 F.4th at 859, or otherwise "constrain[ed] the choices of appliances that the States can purchase." Br. 68. During the rulemaking, the agency received several comments noting that "many residential dishwasher, residential clothes washer, and consumer clothes dryer models already provide short-cycle times while meeting the existing standards." 87 Fed. Reg. at 2681.

---

[4] The remaining States offer no evidence to support this alleged injury.

And the agency explained that "[t]he standards in place prior to the [short-cycle rules], to which DOE is now reverting, do not impede the inclusion of these cycle options in products currently available on the market." *Id.* at 2682.

Louisiana's declarations also fail to clearly demonstrate that the State purchases *residential* dishwashers, *residential* clothes washers, or *consumer* clothes dryers—the only appliances at issue in this litigation.[5] Louisiana's declarations suggest that the State purchases *commercial* dishwashers, clothes washers, and clothes dryers, which the short-cycle rules do not address. For instance, the General Counsel for the Louisiana Department of Public Safety and Corrections asserts that the Louisiana prison system procures "dishwashers, washers, and dryers," but adds that "[d]ishes, kitchen utensils, clothes, towels, and linens must be cleaned on an *industrial-sized scale* in a prison system." Vining Decl. 2 (emphasis added). Similarly, the CEO of a Louisiana nursing home states that his facilities "require and utilize dishwashers, washers, and dryers . . . for the daily living activities of *over 150 residents* of this state owned Nursing Home."

_____

[5] The EPCA authorizes DOE to regulate the energy efficiency of consumer (or residential) products, like the residential dishwashers and clothes washers and consumer clothes dryers at issue in the 2020 and 2022 rules on the one hand, *see* 42 U.S.C. §§ 6291-6309, and commercial products on the other, *see* 42 U.S.C. §§ 6311-6317. EPCA provisions pertaining to the regulation of commercial equipment, including commercial versions of the above appliances, are not at issue here. *See, e.g.,* 10 C.F.R. § 431.152 (defining "commercial clothes washer" as a clothes washer that is "designed for use in . . . commercial applications," including "[a]pplications in which the occupants of more than one household will be using the clothes washer, such as multi-family housing common areas and coin laundries").

Eckler Decl. 2 (emphasis added).  And while the CEO of the Eastern Louisiana Mental Health System avers that its "two inpatient hospital facilities . . . and two residential group home programs . . . have dishwashers, washers, and dryers" that the "State purchases," Lea Decl. 2, the CEO does not indicate whether these appliances are residential in nature.

2.  The States' sales-tax theory of standing fares no better.  This Court and others have rejected attempts to rely on reduced tax revenue to support standing.  *See, e.g.*, *El Paso County v. Trump*, 982 F.3d 332, 339 (5th Cir. 2020); *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985); *Pennsylvania, by Shapp v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976) (explaining that because of the "unavoidable economic repercussions of virtually all federal policies," the "impairment of state tax revenues should not, in general, be recognized as sufficient injury in fact to support state standing").  Here, the States assume that if DOE had not repealed the short-cycle rules, consumers would have purchased new short-cycle appliances, which might be more expensive to run.  Br. 69.  But they offer "no concrete evidence" that consumers will behave this way,[6] or that the States' sales tax "revenues have decreased

---

[6] The support petitioners do cite—the pages of their own brief, *see* Br. 69 (citing Br. 20-21)—do not address costs at all, let alone a consumer's willingness to pay more for an appliance that can run a short normal cycle.  Insofar as petitioners suggest that survey data indicates consumers would purchase a more expensive appliance and thereby increase the States' sales tax revenue, they are mistaken.  The survey data petitioners reference addresses appliances that "cost[] slightly more to *run*."  85 Fed. Reg. at 68,733 (emphasis added) (citing CEI survey data).  The survey

*Continued on next page.*

or will decrease" from repealing the short-cycle rules. *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012). Where assertions—like the States'—"rest on speculation about the decisions of independent actors," courts are especially "reluctan[t]" to find standing. *Clapper*, 568 U.S. at 414; *see also California v. Texas*, 141 S. Ct. 2104, 2117 (2021) ("[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party," standing is "ordinarily 'substantially more difficult' to establish." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992))); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ("A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."). And even if the States are correct that consumers will choose to purchase a short-normal-cycle appliance over an appliance that lacks this feature, the States do not attempt to quantify the anticipated effect this will have on sales tax revenues. They simply assume that short-cycle appliances "might be more expensive," Br. 69, and they do not explain why an increase in tax revenue from the sale of short-cycle appliances would not be offset by a corresponding decrease in tax revenue from fewer sales of standard appliances.

---

did not ask consumers whether they would choose a short-cycle appliance that was more expensive to *purchase*. *See* CEI Comment, Attachment B (Oct. 12, 2021), https://perma.cc/C9YQ-BUMV.

3.  The States cannot satisfy the injury-in-fact requirement by invoking the "special solicitude" referenced in *Massachusetts v. EPA*, 549 U.S. 497, 517-20 (2007). *See Arizona v. Biden*, 40 F.4th 375, 385-86 (6th Cir. 2022) (States cannot "bypass proof of injury in particular or Article III in general"). *Massachusetts* explained that States receive "special solicitude" because they may incur "quasi-sovereign" injuries, 549 U.S. at 517-20; but here, the States' asserted injuries are not "uniquely sovereign," *Arizona*, 40 F.4th at 386 (describing sovereign interests as pertaining to the regulation of States themselves, preemption of their lawmaking authority, "threatened incursions on their property or territory," or public nuisances that affect a State's domain). The States' "main objection is to indirect fiscal [consequences] flowing from the [final rule]." *Id.* This "humdrum feature of a regulation," which "imposes" only "peripheral costs on a State," does not create a "cognizable Article III injury." *Id.*

Finally, the States make cursory reference to alleged procedural injuries, *see* Br. 69 (asserting "procedural rights under the APA"), but they do not identify what procedural injuries they have sustained. In any event, a procedural injury may suffice to establish standing only where an agency's "disregard" of a "procedural requirement" "could impair a separate concrete interest" held by the States. *Lujan*, 504 U.S. at 572-76. For the reasons explained above, the States lack such a concrete interest here.

## II.    The 2022 Final Rule Is Substantively Sound, And Petitioners Offer No Basis On Which To Set It Aside

If the Court reaches the merits of the States' challenge, it should deny the petition for review because DOE properly determined that the agency's failure to consider relevant provisions of the EPCA during the 2020 short-cycle rulemakings justified repeal.

### A.    The 2022 Final Rule Is Fully Consistent With The EPCA

1.  The EPCA authorizes DOE to set new energy conservation standards for a variety of covered consumer products, including residential dishwashers, residential clothes washers, and consumer clothes dryers, and to amend existing standards, subject to specific statutory criteria.

First, as relevant here, 42 U.S.C. § 6295(o)(2)(A) provides that "[a]ny new or amended energy conservation standard . . . shall be designed to achieve the maximum *improvement* in energy efficiency[]" that is technologically feasible and economically justified." (emphasis added).  When amending a standard, the agency shall not "increase[] the maximum allowable energy use, . . . or decrease[] the minimum required energy efficiency, of a covered product." *Id.* § 6295(o)(1).  Nor shall the agency prescribe a standard that "will not result in significant conservation of energy." *Id.* § 6295(o)(3)(B).

Second, under § 6295(q), rules "prescribing an energy conservation standard for a type (or class) of covered products" must also "specify a level of energy use or

efficiency." 42 U.S.C. § 6295(q)(1). That level of energy use or efficiency may be "higher or lower" than the level that "applies (or would apply)" for the class of covered products "which have the same function or intended use," but only if the Secretary makes one of two determinations: either the products must "consume a different kind of energy from that consumed by other covered products within such . . . class," or the products must "have a capacity or other performance-related feature which other products within such . . . class[] do not have," and which "justifies" adopting "a higher or lower standard." *Id.* In promulgating a higher or lower standard, the agency must "include an explanation of the basis on which such . . . level was established." *Id.* § 6295(q)(2).

The agency properly determined that it was required to consider subsection (o) and comply fully with subsection (q) when issuing the 2020 short-cycle rules, and that its failure to do so supported revocation. As the agency explained, prior to the issuance of the short-cycle rules, residential dishwashers, residential clothes washers, and consumer clothes dryers were separated into product classes based on their capacity (standard and compact dishwashers and clothes dryers); orientation (top-loading and front-loading clothes washers); fuel source (120 volt electric, 240 volt electric, or gas clothes dryers); venting configuration (vented or ventless clothes dryers); or integration with a clothes washer (combination washer dryer). *See* 42 U.S.C. § 6295(g)(9)(A), (10)(A); 10 C.F.R. 430.32(h)(3). These product classes were subject to mandatory energy efficiency standards. 10 C.F.R. § 430.32(f), (g), (h). The

2020 short-cycle rules, however, further divided these product classes based on cycle time and allowed standard residential dishwashers, residential clothes washers, and consumer clothes dryers with shorter "normal" cycle times to operate outside the previously applicable energy and/or water conservation standards. As a consequence, the short-cycle rules amended the existing efficiency standards and permitted these product classes to consume unlimited amounts of energy and water. DOE explained in the 2022 Final Rule that by allowing these product classes, which were formerly subject to existing standards, to consume unlimited amounts of energy and water going forward, DOE had amended and lowered the efficiency standards applicable to these classes of products by "delet[ing]" them "altogether." 87 Fed. Reg. at 2678.

The agency determined that removing the applicable efficiency standards was an "amend[ment]" to the existing standards for those products. The agency explained that this understanding comports with the dictionary definition of the word "amend," which means to "alter formally by adding, deleting or rephrasing." 87 Fed. Reg. at 2678 (quoting American Heritage Dictionary for the English Language 42 (1981)). The agency further explained that its previous failure to consider the application of subsection (o) "thwarted" the EPCA's "express purpose" pertaining to "energy and water conservation." *Id.* at 2683. DOE accordingly concluded that it should have considered the criteria contained in subsection (o), including the statute's anti-backsliding provision. *See* 42 U.S.C. § 6295(o).

23

Moreover, DOE explained that "[e]ven if EPCA authorized deferrals in some instances, any creation of the new product classes here would have needed to follow the requirements of 42 U.S.C. 6295(q), which frames the development of a product class within the context of an energy conservation standard rulemaking." 87 Fed. Reg. at 2680. Those requirements include "specify[ing] a level of energy use or efficiency higher or lower than that which applies (or would apply)" to the newly created classes of products and providing both the basis and justification for such a level. 42 U.S.C. § 6295(q)(1).

Having determined that the short-cycle rulemakings failed to consider relevant statutory provisions, the agency properly concluded that the 2020 short-cycle rules were promulgated unlawfully. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (assessing whether agency "entirely failed to consider an important aspect of the problem" in deciding whether agency action is "arbitrary and capricious"). The agency accordingly revoked the rules and reinstated the previous efficiency standards for residential dishwashers, residential clothes washers, and consumer clothes dryers.

2. The States' challenges to the agency's reasoning turn largely on their contentions that (1) the agency was not required to consider § 6295(o) because the short-cycle rules did not amend any energy conservation standards, and (2) DOE was not required to set standards for the new product classes at the time of the rulemakings under § 6295(q). Neither argument has merit.

24

a.  The States first assert that the requirements of subsection (o) are irrelevant to the short-cycle rulemakings because the rules "create[d] a *new*—not amended— class."  Br. 27.  In addition to conflating classes and standards, this contention rests on the mistaken view that the agency can "stay[] within the four corners of subsection (q)."  Br. 25-26.  As explained, where, as here, the creation of a new class results in an amendment to mandatory energy use and efficiency standards, the EPCA requires DOE to also consider the criteria set forth in subsection (o).

The States resist this common-sense application of subsection (o)'s provisions. They argue that the "prior standards" "continue to endure" for dishwashers and clothes washers that do not belong to the short-cycle product classes, and that therefore the standards have not been "amended."  Br. 36-37.  But this approach ignores the effect of the short-cycle rules on the standards for *short-cycle products* that would have otherwise been subject to the same efficiency standards as other residential dishwashers and clothes washers.  *See supra* at 3-4.

Next, the States mistakenly contend that the agency's conclusion that the 2020 short-cycle rules effected an amendment to applicable energy standards conflicts with the dictionary definition of the word "amend" on which DOE relied.  Br. 38; 87 Fed. Reg. at 2678.  The States argue that although the American Heritage Dictionary for the English Language defines "amend" as "alter[ing] *formally* by adding, deleting or rephrasing," the short-cycle rules merely "constructively or implicitly" altered the standards applicable to short-cycle products, Br. 38-39 (quotation marks omitted).

The States further state that "constructively altering something is the opposite of altering it formally," and that therefore the 2020 short-cycle rules did not "amend" the energy standards for these products as required by DOE's preferred dictionary definition.  Br. 39 (quotation marks omitted).  Even assuming that the word "formally" in the definition carries any legal significance, petitioners do not explain why a notice and comment rulemaking that amended the applicable energy standards for these products in the Code of Federal Regulations does not achieve the level of formality contemplated by the definition.

The States are equally mistaken in contending that DOE has "read[] 'amended' in subsection (o)(1) so broadly that it applies to 'new' standards," too.  Br. 41.  As the agency explained, the short-cycle rules *changed* the applicable existing energy conservation standards for short-cycle products—the rules did not create a new standard where none previously existed.

The States also argue that if the agency's view of subsection (o) is correct, the provision conflicts with subsection (q), which permits the agency to prescribe new standards for a product class that are higher or lower than the otherwise applicable conservation standards and would render the "or lower" language "a nullity."  Br. 41-46.  And they suggest (Br. 46-50) that various canons of construction foreclose an interpretation of subsection (o) that would impede the agency's ability to prescribe lower levels of energy use than existing conservation standards under subsection (q).  The States' objections on these grounds are premature:  the agency did not need to

resolve whether or when the two provisions conflict in order to conclude that DOE

failed to adequately consider subsection (o).  Instead, the agency observed that by

amending applicable energy standards, the 2020 short-cycle rulemakings fell squarely

within the scope of subsection (o), and the agency was therefore required to consider

the application of that provision.  DOE further explained that any creation of new

product classes could not occur in a vacuum, without following the EPCA's

procedures.  The agency stated that the "creation of new product classes here would

have needed to follow the requirements of 42 U.S.C. 6295(q), which frames the

development of a product class within the context of an energy conservation standard

rulemaking."  87 Fed. Reg. at 2680.  Because the agency failed to adequately undertake

either analysis during the short-cycle rulemakings, the agency reasonably concluded

that the 2020 short-cycle rules were issued unlawfully and merited revocation.

     b.  Relying on prior DOE rulemakings from 2007 and 2009, the States further

contend that the EPCA permits DOE to establish new product classes under

§ 6295(q) without prescribing energy conservation standards for those product

classes.  Br. 55.  Petitioners' argument is premised on a misunderstanding of the prior

rulemakings.

     In contrast to the 2020 short-cycle rulemakings, both the 2007 distribution

transformer and 2009 beverage vending machine rulemakings applied the criteria in

subsection (o) to the product classes in question.  *See* 72 Fed. Reg. 58,190, 58,201

(Oct. 12, 2007) (setting standards for distribution transformers, but not the separate

product class for underground mining distribution transformers); 74 Fed. Reg. 44,914, 44,920 (Aug. 31, 2009) (setting standards for beverage machines, but not combination beverage vending machines).  In both rulemakings, DOE stated that it was unable to determine whether energy conservation standards would be economically justified and result in significant energy savings for those product classes.  72 Fed. Reg. at 58,201; 74 Fed. Reg. at 44,920.  As a result, DOE stated it could not, at that time, set standards for those product classes.  *Id.*

The 2022 Final Rule thus reasonably distinguished DOE's approach in these earlier rulemakings from the approach taken during the 2020 short-cycle rulemakings at issue here.  *See* 87 Fed. Reg. at 2679-80.  As the agency explained, neither beverage vending machines nor distribution transformers "were . . . subject to energy use or efficiency restrictions" at the time of the rulemakings, and "[b]oth the 2007 and 2009 rulemakings were the *first instance[s]* of energy conservation standards being promulgated" for these products.  *Id.* at 2680 (emphasis added).  Because there were no preexisting standards for these products, the 2007 and 2009 rulemakings did not effect an amendment of any energy conservation standards.  By contrast, at the time of the 2020 short-cycle rulemakings, dishwashers, clothes washers, and clothes dryers were already subject to mandatory energy use and efficiency standards.  Creating new product classes without specifying an efficiency standard permitted the product classes to consume unlimited amounts of energy and water.  In the 2022 Final Rule, the agency therefore reasonably determined that removal of the applicable energy

and/or water conservation standards for short-cycle products was an amendment to the existing standards for these products that required the agency to consider the criteria contained in subsection (o). *Cf., e.g., A Cmty. Voice v. U.S. EPA*, 997 F.3d 983, 995 (9th Cir. 2021) (stating that an agency must consider all relevant issues that bear on the reasonableness of its rules); *ITT World Commc'ns, Inc. v. Federal Commc'ns Comm'n*, 725 F.2d 732, 743-44 (D.C. Cir. 1984) (same).

### B.    The 2022 Final Rule Is Neither Arbitrary Nor Capricious

As explained, because the agency concluded that the 2020 short-cycle rules failed to consider the EPCA's requirements for amending or creating an energy conservation standard, DOE reasonably chose to revoke the rule.  The States' arguments to the contrary are unpersuasive.

The States first renew their contention that DOE failed to adequately explain its "depart[ure]" from the 2007 transformer rulemaking and 2009 vending machine rulemaking by repealing the short-cycle rules for failure to create efficiency standards for the short-cycle product classes.  Br. 57-58.  But, as discussed above, the agency distinguished the approach taken in those rulemakings—which involved products without pre-existing efficiency standards—and the short-cycle rulemakings, which amended the standards as applied to short-cycle products.  Thus, even if this Court were to consider the 2022 Final Rule a departure from prior agency policy, DOE adequately explained the reason for its change.  *See Brackeen v. Haaland*, 994 F.3d 249, 355-56 (5th Cir. 2021) (en banc) (finding agency departure from prior interpretation

of the statute was not arbitrary or capricious), *cert. granted on other grounds*, 142 S. Ct. 1205 (2022).

The States also argue that DOE did not "meaningfully grapple[] with the consequences" of the view that "DOE may *never* create a new product class with a lower efficiency standard if the product is already governed by existing standards." Br. 58. But the agency took no such position when repealing the short-cycle rule. As explained, the agency stated that it was revoking the 2020 rules because the agency had failed to adequately consider the requirements of subsection (o), not because the rules necessarily violated the substantive requirements of one or both of those provisions.

In a similar vein, petitioners wrongly assert that the final rule "accepts that the Performance Classes have new features with actual utility," and that the agency "just regards that greater utility as categorically irrelevant." Br. 59. To the contrary, the agency made clear it was "*not contending* . . . the validity of the determinations made about whether short cycles provide a 'performance-related feature' and 'utility,'" because "the appropriate occasion for conducting" such an "analysis is in a rulemaking prescribing new or amended standards." 87 Fed. Reg. at 2682 (emphasis added).

The States are also mistaken in contending that DOE failed to consider reliance interests. The agency found a "lack of reliance by stakeholders on the short-cycle product class definitions" based on (1) a "lack" of "residential dishwashers, residential

30

clothes washers, or consumer clothes dryers that are certified and sold as short-cycle products . . . on the market," and (2) the 8- to 10-month period between issuing the short-cycle rules in October and December 2020, and proposing to revoke them in August 2021.  87 Fed. Reg. at 2686.  Although the agency's assessment was brief, the record demonstrates that DOE considered the existence and strength of reliance interests that may have developed after the short-cycle rules and determined that those interests did not outweigh a need to correct the agency's previous unlawful exercise of its authority.  *Id.*  That conclusion was not arbitrary or capricious.  *See Mozilla Corp. v. Fed. Commc'ns Comm'n*, 940 F.3d 1, 64-65 (D.C. Cir. 2019) (agency's brief "treatment of reliance interests" was "not arbitrary or capricious").

The States urge that DOE improperly treated the short period of time between the issuance of the 2020 short-cycle rules and the 2022 Final Rule as "*precluding* any reliance interests from existing."  Br. 64-65 (emphasis added).  As discussed, however, the agency considered whether such interests existed, and ultimately determined that they did not—both because of the short 8- to 10-month period *and* because there are no certified short-cycle products currently on the market.  That determination was reasonable.  *Mozilla Corp.*, 940 F.3d at 64 (explaining that two years is "a limited period to engender reliance" and holding that reliance on the rule "would not have been reasonable unless tempered by substantial concerns for legal or political jeopardy").

For this reason, *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), is inapposite.  There, the Department of Homeland

31

Security conceded that it did not consider reliance interests when it terminated the

Deferred Action for Childhood Arrivals (DACA) program. *Id.* at 1913. Instead, the

agency argued that it was not required to consider any such interests because the

program "conferred no substantive rights" on DACA recipients and "provided

benefits only in two-year increments." *Id.* (quotation marks omitted). The Court

rejected this view, holding that these "features" do not "automatically preclude

reliance interests" and instead affect "the strength" of such interests. *Id.* at 1913-14.

Unlike in *Regents*, DOE considered stakeholders' reliance interests before repealing the

short-cycle rules. That the States disagree with the outcome of the agency's

consideration does not render the final rule arbitrary or capricious.

The States also fault DOE for not expressly addressing "whether any

manufacturers *might* currently be *developing* [short-cycle] products," or "whether any

consumers *might* have been relying on the . . . future availability of [short-cycle]

products, and therefore postponing purchasing decisions." Br. 64 (first and third

emphases added). But the States offer no evidence that either of these potential

interests exists.

Finally, the States argue that DOE failed to explain why it could not have opted

to promulgate standards for short-cycle products rather than repeal the rules. But the

agency *did* explain why it chose to not to propose new standards. DOE highlighted

"the lack of presently-available data that would be necessary to analyze the short-cycle

product classes and establish new standards for these class[es]," as well as "the

absence of new products on the market that would fall within these new product classes." 87 Fed. Reg. at 2683. The agency "weighed these factors" as well as the "time and resources that it would entail to develop . . . new standards in relation to other [agency] obligations," "against the benefit of more quickly fixing an EPCA procedural error through . . . revocation" and "determined that revoking the 2020 Final Rules was the best course of action." *Id.* Although the States may disagree with the balance the agency struck, the agency's reasoning was not arbitrary or capricious. *E.g., Xcel Energy Servs. Inc. v. Federal Energy Regulatory Comm'n*, 41 F.4th 548, 562 (D.C. Cir. 2022) ("[A] reasonable balancing of divergent considerations on a matter within the Commission's expertise merits deference.").

## CONCLUSION

For the foregoing reasons, the petition should be dismissed for lack of jurisdiction or denied on the merits.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB

AMI GRACE-TARDY
*Assistant General Counsel*

PETER COCHRAN
KRISTIN KOERNIG
KATHRYN MCINTOSH
*Attorneys*
*Department of Energy*

*Washington, D.C. 20585*

/s/ *Amanda L. Mundell*
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, D.C. 20530*
*(202) 514-3469*
*Amanda.L.Mundell@usdoj.gov*

September 2022

## CERTIFICATE OF SERVICE

I certify that on September 6, 2022, I filed a copy of this brief with the Clerk of Court for the Fifth Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel for all parties.

/s/ Amanda L. Mundell
Amanda L. Mundell

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8089 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Amanda L. Mundell
Amanda L. Mundell